IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SYLVAN ROSS,** | ) <br> ) <br> ) **Civil Action No.** _____ <br> **Plaintiff,** ) <br> v. ) **Jury Trial Demanded** <br> ) <br> **LOYOLA UNIVERSITY** ) <br> **NEW ORLEANS,** ) <br> ) <br> **Defendant.** ) <br> ) |

## COMPLAINT

Plaintiff SYLVAN ROSS, through the undersigned counsel, brings this action against Defendant LOYOLA UNIVERSITY NEW ORLEANS, and respectfully alleges as follows:

## NATURE OF ACTION

1. This is an action seeking damages and other relief from Defendant to redress its violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301, *et seq*. As alleged herein, Defendant discriminated against Mr. Ross on the basis of his disability, age, and race.

## PARTIES

2. Plaintiff, Sylvan Ross ("Plaintiff" or "Mr. Ross"), is a competent person of the full age of majority residing in LaPlace, Louisiana.

1

3. Defendant Loyola University New Orleans ("Defendant") is a corporation organized and existing under the laws of the state of Louisiana with its principal place of business in New Orleans, Louisiana.

4. Defendant is an employer with more than 20 employees.

5. Defendant qualifies as an employer as defined by all relevant statutes referenced herein.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper because, among other things, one or more of the alleged unlawful employment practices occurred in this District, and Defendant maintains its principal place of business in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Mr. Ross first initiated contact with the Equal Employment Opportunity Commission ("EEOC") on or about December 3, 2021. The EEOC prepared Mr. Ross's Charge of Discrimination and Amended Charge of Discrimination as he was not represented by counsel. The Amended Charge of Discrimination is annexed hereto as Exhibit A.

9. Mr. Ross received a Right-to-Sue Notice dated March 18, 2022 on or about that date, and this lawsuit is commenced within 90 days of his receipt of the Right-to-Sue Notice. Therefore, all conditions precedent to the filing of this suit have been satisfied.

**FACTUAL ALLEGATIONS**

10. Mr. Ross is a 67-year-old Black male U.S. Marine Corps Veteran with a documented disability.

11. Mr. Ross began working for Defendant on or about April 3, 2006 as a Physical Plaint Engineer.

12. When Mr. Ross was hired, he was assigned to work at Defendant's main undergraduate campus, located at 6363 St. Charles Avenue ("Main Campus").

13. Prior to the time of his hire, Mr. Ross suffered an injury to his right foot and ankle during his time serving in the military.

14. At the time of his hire, Mr. Ross experienced relatively no pain because of his injury and was able to manage his injury effectively.

15. However, over time, Defendant added additional job duties to Mr. Ross's position.

16. Examples of these duties were checking on the over 40 mechanical rooms located on campus; responding to campus-wide service calls, alarms, and faulty systems; and walking the entire campus to check for light bulbs that needed replacement.

17. Due to these additional duties, Mr. Ross's existing injury began to worsen.

18. In or around 2014, Mr. Ross mentioned his worsening injury to his supervisor at the time, Charles "Chip" B. Smith, Defendant's Director of Mechanical Systems, Physical Plant.

19. Mr. Smith relayed the conversation that he and Mr. Ross had had to Defendant's human resources department.

20. In response, Mr. Ross was asked to attend a meeting with Mr. Smith and Defendant's HR director and to bring to the meeting medical documentation sufficient to support his injury.

21. Mr. Ross provided documentation from his doctor that stated that Mr. Ross should refrain from excessive standing, walking, or running.

22. As a result, on March 28, 2014, Mr. Ross was provided an accommodation for his documented disability.

23. The accommodation provided by Defendant for Mr. Ross's disability was that all his shifts were assigned to Defendant's Law School campus ("Broadway Campus") (with the exception of rare instances where Mr. Ross would have to work at the Main Campus so that Defendant could comply with City requirements when another engineer was unexpectedly or expectedly out). Mr. Ross was also permitted to take breaks as needed in the event that Mr. Ross felt any discomfort because of his disability.

24. When Mr. Ross worked on the Main Campus, consistent with his accommodation, Mr. Ross would remain in the plant and operated the chillers, boilers, and other equipment. Mr. Ross would not walk the Main Campus grounds, as he had done before receiving his accommodation.

25. After Mr. Smith retired, David Strain assumed Mr. Smith's position. Brian Cookman assumed the role of Mr. Ross's immediate supervisor at this time.

26. Despite the accommodation provided to Mr. Ross by Defendant, Mr. Strain began to assign shifts to Mr. Ross at the Main Campus more frequently.

27. Shortly after Mr. Strain assumed the position of Director of Mechanical Systems, Mr. Ross was asked by Defendant's HR department to submit updated medical documentation in support of Mr. Ross's disability.

28. On or before May 8, 2019, Mr. Ross submitted updated medical documentation to Defendant to confirm his disability. The documentation from Mr. Ross's doctor indicated that Mr.

Ross should refrain from excessive standing, walking, and running, and added an additional limitation, that Mr. Ross wear an ankle brace at all times.

29. On May 8, 2019, Mr. Ross received a letter from Defendant's Human Resources Representative, Heather Blanchard (with a copy to Mr. Strain), stating that there was no change in his current accommodation based on Mr. Ross's doctor's letter. Ms. Blanchard's letter parroted language from the letter that Mr. Ross provided, specifically stating that Mr. Ross should refrain from excessive standing, walking, and running, and wear an ankle brace at all times. In her letter, Ms. Blanchard also stated that she informed Mr. Strain that there was no change in accommodation.

30. Subsequently, on or about April 21, 2021, Mr. Cookman asked Mr. Ross about his disability during an informal meeting on the Broadway Campus.

31. Upon information and belief, during this meeting, Mr. Cookman was holding Mr. Ross's prior accommodation documentation.

32. Mr. Ross confirmed to Mr. Cookman that he suffered from a disability.

33. During this meeting, Mr. Cookman asked Mr. Ross if he had considered retirement. Mr. Ross stated he may consider retirement if Defendant would provide him a retirement package.

34. During this meeting, Mr. Cookman also told Mr. Ross to obtain updated documentation relating to his disability and any restrictions his disability placed on his ability to work.

35. Upon information and belief, Mr. Cookman reported to Mr. Strain that Mr. Ross had complained about the excessive walking when working at the Main Campus.

36. On May 20, 2021, Mr. Ross received medical documentation supporting his continued need for the accommodation provided by Defendant. The documentation stated that Mr.

Ross is able to return to work with the following restrictions: no excessive running, walking, or standing.

37. Mr. Ross provided the May 20, 2021 document from his doctor to Defendant.

38. Mr. Ross, therefore, provided documentation from his medical provider confirming his disability and need for a reasonable accommodation on at least three occasions, in or around March 2014, on or about May 8, 2019, and on or about May 20, 2021.

39. Soon after Mr. Ross's conversation with Mr. Cookman, Mr. Ross was requested to attend a meeting with Mr. Cookman, Mr. Strain, and Defendant's HR Director, Rachel Dirmann, in the HR office on June 2, 2021.

40. During the June 2, 2021 meeting, Ms. Dirmann stated that Defendant was partially rescinding the provided accommodation. Mr. Ross was informed that when he was assigned to the Main Campus, he would be required to walk the campus grounds, including checking buildings and walking all floors to check mechanical rooms.

41. As reflected in the May 20, 2021 letter from Mr. Ross's medical provider, Mr. Ross's disability had not improved.

42. No legitimate reason was provided by Defendant to Mr. Ross for Defendant's decision to partially rescind the accommodation provided to Mr. Ross for his disability.

43. During this meeting, Ms. Dirmann also told Mr. Ross that at his age, he should consider retiring.

44. During the same meeting, Ms. Dirmann said that she heard from Mr. Cookman that Mr. Ross would retire if he would be given a severance package by Defendant, but informed Mr. Ross that Defendant would not provide any severance package to Mr. Ross because if they provided one for Mr. Ross, Defendant would need to provide one for everyone.

45. Between early June and late November 2021, Mr. Ross was assigned to and worked at both the Main Campus and Broadway Campus. When working at the Main Campus, Mr. Ross was expected to perform his duties without any accommodation.

46. Because of his disability, Mr. Ross had difficulty performing the assigned duties at the Main Campus as they required him to, among other things: walk to nine buildings with several floors (some with more than one mechanical room) and regularly walk back and forth to the plant to log hourly equipment readings.

47. On November 23, 2021, Mr. Ross received a phone call from Mr. Strain during which Mr. Strain informed Mr. Ross that, as of December 12, 2021, Mr. Ross would be assigned to the Main Campus full-time.

48. Mr. Strain further informed Mr. Ross during this conversation that his accommodation was being fully rescinded.

49. Defendant did not provide a justification for its decision to fully rescind the accommodation.

50. During this call, when Mr. Ross asked how long he would be assigned to the Main Campus, Mr. Strain responded that Mr. Ross would be assigned to the Main Campus for as long as Mr. Strain wanted him there.

51. Upon information and belief, Mr. Strain was preparing a younger (in his 30s) White male employee, Tim Armstrong, to replace Mr. Ross.

52. Because it became clear to Mr. Ross that Defendant no longer was willing to acknowledge or accommodate Mr. Ross's disability (in spite of the circumstances surrounding Mr. Ross's disability not ameliorating), and because Mr. Ross's disability did not allow for him to be

assigned to the Main Campus without an accommodation, Mr. Ross submitted his resignation on December 6, 2021.

53. Mr. Ross would not have resigned but for the stress he was forced to endure as a result of Defendant's actions.

54. After his resignation, when Mr. Ross returned to clean out his locker, upon information and belief, Mr. Armstrong was already working Mr. Ross's former shift.

55. At the time of his resignation, Mr. Ross was the only Black employee in his department.

56. Upon information and belief, John Brown, a White male former employee of Defendant, who had worked in Mr. Ross's department, received a severance package when he resigned. Mr. Ross was not offered or provided a severance or retirement package.

57. The above occurrences weren't the first time Mr. Ross faced adverse and disparate treatment because of his race.

    a. On one occasion, on or around June 25, 2007, when Mr. Ross stated that a particular employee had trained him, the employee Mr. Ross had referred to disagreed with Mr. Ross, responding, "I don't train monkeys."

    b. Subsequently, in or around September 2008, during the time President Obama was campaigning for the November 2008 election, two White co-workers of Mr. Ross would routinely greet each other with a fist bump with one White co-worker saying loudly, "power to the White people."

    c. Later, in or around the 2015-2016 academic year, Mr. Ross's immediate supervisor summoned him to the Main Campus by saying, "Sylvan, you better get your Black ass over here."

58. During his employment, Mr. Ross was one of the oldest employees in his department.

59. All of Mr. Ross's performance evaluations during his employment indicated that Mr. Ross was qualified for his position, capable of performing his job duties, and meeting all expectations.

60. Defendant discriminated against Mr. Ross on the basis of his disability, age, and race.

61. Defendant's actions constituted a constructive discharge of Mr. Ross from his employment with Defendant.

62. Defendant's actions have been willful and in reckless disregard of Mr. Ross's legal rights.

## FIRST CAUSE OF ACTION
**(Disability Discrimination – Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* Claims)**

63. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

64. Mr. Ross had a qualified and documented disability.

65. Mr. Ross was a qualified individual who could perform the essential functions of his job.

66. Defendant provided Mr. Ross a reasonable accommodation based on his disability.

67. Defendant rescinded Mr. Ross's reasonable accommodation without a legitimate justification.

68. It was not an undue hardship on Defendant to provide Mr. Ross a reasonable accommodation.

69. Defendant constructively discharged Mr. Ross by rescinding his reasonable accommodation. Defendant never articulated any hardship to Mr. Ross.

70. Defendant has intentionally discriminated against Mr. Ross on the basis of his disability in violation of the Americans with Disabilities Act.

71. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

## SECOND CAUSE OF ACTION
**(Disability Discrimination – State Law, La. Rev. Stat. 23:301, Claims)**

72. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

73. Defendant has intentionally discriminated against Mr. Ross on the basis of his disability in violation of Louisiana Employment Discrimination Law, specifically La. Rev. Stat. 23:323.

74. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

## THIRD CAUSE OF ACTION
### (Age Discrimination –
### Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* Claims)

75. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

76. At all relevant times, Mr. Ross was over the age of forty.

77. At all relevant times, Mr. Ross was qualified for his position.

78. Defendant suggested that Mr. Ross retire from his position because of his age.

79. Defendant constructively discharged Mr. Ross.

80. Defendant has intentionally discriminated against Mr. Ross on the basis of age in violation of the Age Discrimination in Employment Act in 1967.

81. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

## FOURTH CAUSE OF ACTION
### (Age Discrimination – State Law, La. Rev. Stat. 23:301, *et seq.* Claims)

82. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

83. Defendant has intentionally discriminated against Mr. Ross on the basis of age in violation of Louisiana Employment Discrimination Law, specifically La. Rev. Stat. 23:312.

84. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in

violation of the laws of the Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

**FIFTH CAUSE OF ACTION**
**(Race Discrimination –**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Claims)**

85.   Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

86.   Mr. Ross suffered disparate and adverse treatment based on his race.

87.   Defendant has intentionally discriminated against Mr. Ross on the basis of his race in violation of Title VII of the Civil Rights Act of 1964.

88.   Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

**SIXTH CAUSE OF ACTION**
**(Race Discrimination – State Law, La. Rev. Stat. 23:301, Claims)**

89.   Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

90.   Defendant has intentionally discriminated against Mr. Ross on the basis of his race in violation of Louisiana Employment Discrimination Law, La. Rev. Stat. 23:301, *et seq.*

91. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

### SEVENTH CAUSE OF ACTION
### (Race Discrimination – 42 U.S.C. § 1981 Claims)

92. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

93. Defendant has intentionally discriminated against Mr. Ross on the basis of his race in violation of 42 U.S.C. § 1981.

94. Mr. Ross requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorney's fees, expenses, and costs, and all other and further relief as this Court deems necessary and proper.

### DEMAND FOR JURY

95. Plaintiff hereby demands a trial by jury for all issues in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that he be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant complained of herein are in violation of the laws of the United States and Louisiana; injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, liquidated damages, pre-judgment and post-judgment interest, attorney's fees; expenses; and costs; and all other and further relief as this Court deems necessary and proper.

Dated: June 13, 2022                                    Respectfully Submitted,

**IAS LAW LLC**

By:  s/Imtiaz A. Siddiqui
Imtiaz A. Siddiqui (T.A.)
La. Bar Roll No. 35321
900 Camp Street
Suite 333
New Orleans, Louisiana 70130
Telephone: (504) 500-1876
Facsimile: (504) 814-1760
Email: ias@iaslawllc.com

***Attorney for Plaintiff Sylvan Ross***