UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SYLVAN ROSS | * | CIVIL ACTION |
| VERSUS | * | NO. 22-1731 DIV. (2) |
| LOYOLA UNIVERSITY NEW ORLEANS | * | MAG. JUDGE CURRAULT |

## ORDER AND REASONS

Before me is a Partial Motion to Dismiss filed by Defendant Loyola University New Orleans ("Loyola"). ECF No. 5. This matter was referred for all proceedings including entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. ECF No. 8. Plaintiff Sylvan Ross ("Ross") timely filed an Opposition Memorandum. ECF No. 11. No party requested oral argument, and the Court agrees that oral argument is unnecessary.

Considering the record, the submissions and arguments of counsel, and the applicable law, Loyola's motion is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.   BACKGROUND**

Ross filed this employment discrimination suit against Loyola alleging disability, age and race discrimination under the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII and 42 U.S.C. § 1981, and related state law. ECF No. 1, ¶ 1. The Complaint indicates Ross contacted the EEOC on December 3, 2021, filed an Amended Charge on March 15, 2022, and received a determination letter dated March 18, 2022. *Id.* ¶¶ 8-9; ECF No. 1-3. The earliest date of discrimination is identified as May 20, 2021. ECF No. 1-3, at 1.

**A.   Plaintiff's Complaint**

According to the allegations in Plaintiff's complaint, all of which must be accepted as true for purposes of this motion, Ross is a 67-year-old African American who sustained an injury to

1

his right foot and ankle during his prior military service. ECF No. 1 ¶ 10, 13. He began working at Loyola on April 3, 2006, as a plant engineer on its main campus. *Id.* ¶¶ 11-12. Although Ross experienced no pain when hired, with the addition of job duties to his position over time, he began to experience pain from his pre-existing injury. *Id.* ¶¶ 14-17. Ross notified his supervisor of his worsening injury in 2014, after which he was scheduled to meet with the supervisor and Loyola's HR Director and asked to bring medical documentation evidencing his injury. *Id.* ¶¶ 18-20. Ross brought medical documentation indicating that he should refrain from excessive standing, walking or running, after which he was provided an accommodation, specifically, he was assigned to the law school campus (except for rare instances of main campus assignment to cover for absent co-workers during which he was allowed to remain in the plant) and he was allowed to take breaks when needed in the event of discomfort from his injury). *Id.* ¶¶ 21-23.

Following a personnel change, Plaintiff's new supervisor began to schedule his shifts on the main campus, and Plaintiff was asked to provide updated medical documentation to support his disability. *Id.* ¶¶ 24-27. Plaintiff provided updated medical documentation on or before May 8, 2019, again indicating that he should refrain from excessive standing, walking and running and adding a requirement that he wear an ankle brace. *Id.* ¶ 28. Plaintiff's May 20, 2021 medical documentation indicated the same restrictions. *Id.* ¶ 36-37. During an April 2021 meeting, his immediate supervisor asked him about his disability and whether he had considered retirement. *Id.* ¶¶ 30-33. Later, during a June 2, 2021 meeting, Loyola's HR Director notified Plaintiff that it was partially rescinding the prior accommodation and informed Plaintiff that he would be assigned to the main campus and required to walk the campus grounds. *Id.* ¶ 40. During this meeting, the HR Director told him that at his age, he should consider retiring and that she had heard he would retire if he were given a severance package, but Loyola was not providing severance packages. *Id.*

¶¶ 43-44.  Between June and November 2021, Plaintiff was assigned to work at both the main campus and law school campus, and when assigned to the main campus, he was expected to perform his job duties without any accommodation, but he had difficulty doing so.  *Id.* ¶¶ 45-46.  Plaintiff was notified that he was being assigned full-time to the main campus and that his accommodation was fully rescinded.  *Id.* ¶¶ 47-52.  Plaintiff resigned, which he characterizes as constructive discharged, after which he was replaced by a younger Caucasian employee. *Id.* ¶¶ 52-56, 61.  He states that he was one of the oldest and the only African American employee in the department at the time of his resignation.  *Id.* ¶¶ 55, 58.

Plaintiff contends that he was subjected to discriminatory and/or disparate treatment when he was not given a severance package and a white employee was and when he endured racially offensive comments on June 25, 2007, September 2008, and 2015-16.  *Id.* ¶¶56-57.  Plaintiff identifies seven causes of action: (1) disability discrimination in violation of the ADA; (2) disability discrimination in violation of state law; (3) age discrimination in violation of the ADEA; (4) age discrimination in violation of state law; (5) race discrimination in violation of Title VII; (6) race discrimination under state law; and (7) race discrimination under § 1981.  *Id.* ¶¶ 63-94.

    **B.**    <u>**The Parties' Contentions on Motion to Dismiss**</u>

Defendant moves to dismiss Plaintiff's state law claims (counts 2, 4, and 6) because Louisiana's Employment Discrimination Laws do not apply to Loyola, the Title VII and § 1981 claims (counts 5 and 7 respectively) based on events that render the claims time-barred, and the claim for compensatory and punitive damages under the ADEA.  ECF No. 5, 5-2, at 1.  Specifically, as a private, religious, non-profit educational institution, Loyola is exempt from Louisiana's Employment Discrimination Law's coverage.  ECF No. 5-2, at 4-6.  With regard to

counts 5 and 7, Defendants allege that Plaintiff's Title VII claims and § 1981 claims are time barred to the extent any Title VII claim is based on events occurring before 2021, as Plaintiff's EEOC charge fails to identify any alleged acts of discrimination occurring before 2021, as are any § 1981 claims. *Id*. at 6-9.  Finally, Defendants contend that the ADEA does not provide a basis for punitive damages or general compensatory damages for pain and suffering. *Id.* at 9-10.

In response to Defendant's Motion to Dismiss, in accordance with Fed. R. Civ. P. 15(a)(1)(B), Plaintiff filed an Amended Complaint asserting only four causes of action: (1) claims of disability discrimination (e.g., failure to accommodate) under the ADA, (2) age discrimination under the ADEA, (3) race discrimination (intentional discrimination, disparate and adverse treatment) under Title VII, and (4) race discrimination under § 1981 (intentional discrimination). ECF No. 9, ¶¶ 63-85.  The Amended Complaint omits the state law claims previously asserted and does not seek compensatory or punitive damages under the ADEA, mooting two of the four bases for dismissal urged by Loyola.  ECF No. 11, at 2-3.

With regard to his Title VII claims, Plaintiff concedes that events occurring more than 300 days before the filing of his EEOC charge are not the proper basis for an independent Title VII claim but argues that the evidence is admissible to demonstrate the discriminatory culture at Loyola. *Id.* at 4.  Plaintiff argues that his § 1981 claim alleging that he failed to receive a severance package based on his race is not time-barred because the alleged discriminatory act occurred within the four-year statute of limitations. *Id.* at 3-4.

II. **LAW AND ANALYSIS**

   A. **Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."  "A motion to dismiss for failure to state

a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[1]  Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[2]

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[3]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[4]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[5]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"— "that the pleader is entitled to relief."[6]

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[7]  The complaint must include enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[8]  Although all well-pleaded facts are accepted

---

[1] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).
[2] *Id.*
[3] *Twombly*, 550 U.S. at 555 (citation omitted).
[4] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.
[5] *Iqbal,* 556 U.S. at 678 (citation omitted).
[6] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citation omitted); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).
[7] *Iqbal*, 556 U.S. at 678.
[8] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

as true and the complaint is considered in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[9]

Although Rule 12(d) of the Federal Rules of Civil Procedure requires the court to treat the motion as a Rule 56 motion when matters outside of the pleadings are presented and not excluded by the court, the Court may consider documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis without converting the motion to a Rule 56 motion.[10] In addition, the court may consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[11] Significantly, when an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[12]

B. **Title VII's Time Limitations**

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating against any individual with respect to "terms, conditions, or privileges of employment, because of such individual's race."[13] A plaintiff alleging discrimination claims must exhaust administrative

---

[9] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (The "obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

[10] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted) (stating a court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[11] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 815 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019).

[12] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (stating that if an allegation is contradicted by contents of an exhibit, the exhibit and not the allegation controls) (citing *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)); *Thermo Credit, LLC v. Cordia Corp.*, No. 12-1454, 2013 WL 425930, at *6 (E.D. La. Feb. 4, 2013) (considering documents referenced or attached to complaint and noting that a document that contradicts the pleading takes prominence) (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

[13] 42 U.S.C. § 2000e-2(a)(1).

remedies before filing suit.[14] The filing of a timely EEOC charge is a statutory prerequisite to suit under Title VII.[15] In a deferral state, such as Louisiana, a plaintiff has 300 days from the discriminatory act to file the charge with the EEOC.[16] Any claim filed later than 300 days after the discriminatory act is time barred.[17]

The failure to file a charge of unlawful discrimination within the applicable time period bars a plaintiff from proceeding with a civil action.[18] "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[19] A plaintiff who files a charge of discrimination with the EEOC cannot later assert additional theories of discrimination in a subsequent civil proceeding when those additional theories were not raised in the EEOC charge.[20] A plaintiff who does not raise a claim of discrimination in the EEOC proceeding cannot later sue on that basis.[21]

In the context of disparate treatment claims, each discrete adverse employment action constitutes a separate actionable unlawful employment practice, and each act starts a new clock

---

[14] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also Jones v. City of Hous.*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1)) (per curiam).
[15] *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).
[16] *Conner v. La. Dep't of Health and Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (citations omitted) ("[W]hen a claimant submits an EEOC charge and, pursuant to a work-sharing agreement, the EEOC accepts it on behalf of a deferral state, the claimant is deemed to have initially instituted proceedings with the state agency and the 300–day period is triggered."); *see also Time Limits for Filing a Charge*, U.S. EQUAL EMP. COMM'N, https://www.eeoc.gov/time-limits-filing-charge.
[17] 42 U.S.C. § 2000e-5(e)(1); *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 555–56 (5th Cir. 1987).
[18] *See, e.g., Jay v. International Salt Co.*, 868 F.2d 179, 180 n.1 (5th Cir. 1989); *Cook v. Lee College*, 798 F. Supp. 417, 420-21 (S.D. Tex. 1992).
[19] *Thomas v. Texas Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Hous.*, 906 F.2d 177, 179 (5th Cir. 1990) (citation omitted).
[20] *See, e.g.*, *Kebiro v. Walmart*, 193 F. App'x 365, 367 (5th Cir. 2006) (plaintiff's racial and gender discrimination claims were properly dismissed because his EEOC filings only mentioned his age and national origin); *Luna v. Lockheed Martin Corp.*, 54 F. App'x 404, *1 (5th Cir. 2002) (per curiam) (plaintiff's claim based on national origin discrimination properly dismissed where he only checked the box indicating his intention to bring a claim of retaliation in his EEOC charge); *Thomas,* 220 F.3d at 395 (trial court abused its discretion in amending pretrial order to allow Plaintiff to pursue race discrimination claim where EEOC charge alleged only gender discrimination).
[21] *See, e.g., Hornsby v. Conco, Inc.*, 777 F.2d 243, 247 (5th Cir.) (plaintiff who does not raise claim in EEOC charge cannot later assert a new theory of discrimination based on facts not previously alleged), *reh'g denied*, 780 F.2d 532 (5th Cir. 1985); *Hebert v. Monsanto Company*, 682 F.2d 1111, 1115 (5th Cir. 1982).

for filing charges alleging that act.[22] Thus, the limitations period runs from each alleged discriminatory act. In contrast, hostile work environment claims are subject to the continuing violation doctrine under which, "[a]s long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"[23] But "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[24]

C. **Section 1981's Time Limitations**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981. The Supreme Court initially interpreted § 1981 to apply only to contract formation, not discriminatory conduct in the execution of a contract.[25] In response to that decision, in 1991, Congress amended § 1981 to clarify that it applied to the "performance" of a contract as well as the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[26]

The statute of limitations applicable to § 1981 post-formation claims differs from the limitation period applicable to contract formation claims.[27] Louisiana's one-year prescriptive period for torts applies to contract formation claims,[28] but the general four-year statute of

---

[22] *Smith v. AT&T Mobility Servs., LLC*, No. 21-20366, 2022 WL 1551838, at *2 (5th Cir. May 17, 2022) (quoting *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114, 102 (2002)).
[23] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), *revised* (Mar. 13, 2017), *aff'd sub nom,. Heath v. Elaasar*, 736 F. App'x 351 (5th Cir. 2019) (quoting *Morgan*, 536 U.S. at 117). The "separate acts" must be related for the "single violation" to encompass the earlier acts. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328-29 (5th Cir. 2009) (finding that timely 2006 acts were sufficiently related to 2003-04 acts to constitute a single practice where "the pre–and post-limitations period incidents involved the same type of harassment and were perpetrated by the same manager").
[24] *Morgan*, 536 U.S. at 113.
[25] *Patterson v. McLean Credit Union*, 491 U.S. 164, 183-85 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.
[26] Civil Rights Act of 1991 § 101 (codified at 42 U.S.C. § 1981(b)).
[27] *Lewis v. City of Shreveport*, 2018 WL 752362, at *5 (W.D. La. Feb. 7, 2018).
[28] *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (citing *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir. 1985)).

limitations for federal civil actions adopted in 1990 applies to causes of action authorized by the 1991 amendment to § 1981 (i.e., claims related to contractual performance).[29] Thus, the critical question is whether Ross's cause of action "arose under" the Civil Rights Act of 1991 or under § 1981 as originally enacted.[30] If Ross's claim was cognizable under § 1981 as originally enacted, then Louisiana's one-year prescriptive period applies. But if his claim arose only after the enactment of the 1991 Act, then § 1658(a)'s four-year period applies.[31]

### D. Analysis

Plaintiff's Amended Complaint moots Loyola's request to dismiss all state law claims as well as the demands for compensatory pain and suffering and punitive damages under the ADEA. Accordingly, the motion will be denied as moot as to those bases for dismissal.

Although it is not clear whether Plaintiff seeks to assert independent discrimination claims under either Title VII or § 1981 based on the events that occurred 2007, 2008 and 2015-16, as identified in ¶ 57 of the Amended Complaint, Plaintiff does not argue "continuous violation" or otherwise connect these events to any timely act of discrimination. Thus, Defendant's motion to dismiss as to any such claims arising during those years would be proper.

With regard to the Title VII claim, only discrete acts of discrimination occurring within 300 days of the EEOC charge would be actionable. In this case, Plaintiff alleges that he "first initiated contact" with the EEOC on December 3, 2021 but does not indicate when he actually filed his charge of discrimination. ECF No. 9 ¶ 8. The Amended Complaint references the Amended Charge attached as Exhibit A, but no Exhibit A is attached. However, Plaintiff's original

---

[29] *Id.* (citing Pub. L. 101-650 § 313(a), 104 Stat. 5114 (codified at 28 U.S.C. § 1658); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)); *see also Williams v. Louisiana*, No. 15-2353, 2017 WL 359218, at *5 (W.D. La. Jan. 24, 2017) (citations omitted).
[30] *Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013) (citing *Jones*, 541 U.S. at 373).
[31] *Id.*

9

Complaint likewise referenced Exhibit A, which reflects an Amended Charge dated March 15, 2022. ECF No. 1-3. Although other documents may serve as a charge when verified and sent to the employer,[32] Plaintiff's Amended Complaint lacks any allegations regarding delivery of such documents. Given that the March 15, 2022 Amended Charge suggests there was an original charge that was amended on that date and drawing all inferences in Plaintiff's favor in ruling on this Rule 12(b)(6) motion, December 21, 2021 is the earliest possible charge date. Under Title VII's 300-day limitation period, February 24, 2021 would be the last day on which any adverse employment action could support a claim. Accordingly, any purported Title VII claim based on pre-February 24, 2021 events is time-barred.

The governing prescriptive period on the § 1981 claims depends on whether the claim is a contract formation claim or a post-contract formation claim. With regard to the acts identified in ¶ 57, those events occurring in 2007, 2008 and 2015-16 are all barred whether § 1658's four-year or Louisiana's one-year limitations period applied given that Plaintiff did not file this suit until June 13, 2022. Plaintiff's severance discrimination claim, however, would have arisen when he was told that he would not receive a severance package on June 2, 2021. *See* Amended Complaint, ¶¶ 40, 44. If this claim constitutes a contract formation claim, it is untimely under the one-year prescriptive period, but if it constitutes a post-formation claim, it is timely under § 1658's four-year period.

Loyola argues that Plaintiff's discrimination claim based on the failure to receive a severance package must be construed as a claim relating to the initial formation of a contract (ECF

---

[32] *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 405–07 (2008) (holding that a sufficiently detailed and verified intake questionnaire sufficed as a charge under the ADEA); *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753–54 (5th Cir. 2020) (per curiam) (extending *Holowecki* to Title VII claims). Not all "other documents" including intake questionnaires, however, are sufficient. *See Ernst v. Methodist Hospital Systems*, 1 F.4th 333 (5th Cir. 2021) (holding that allegations in unverified intake questionnaire not delivered to the employer failed to satisfy administrative exhaustion requirements).

10

No. 5-2, at 9) while Plaintiff argues that the claim relates to benefits and privileges of employment post-formation (ECF No. 11, at 4). Before the 1991 Amendments, courts had held that a claim alleging discriminatory denial of severance package were not cognizable under § 1981.[33] Accordingly, if a discriminatory severance claim was not previously cognizable under § 1981 and became cognizable as a result of the 1991 Amendments, then the claim is governed by § 1658's four-year statute of limitation. Accordingly, Plaintiff's claim for discriminatory denial of a severance package is not time-barred.

### III. CONCLUSION

Plaintiff's Amended Complaint deleting his state law claims and any claim for punitive or compensatory damages under the ADEA moots that aspect of Defendant's motion to dismiss. Plaintiff is time-barred from asserting any Title VII claim based on adverse employment actions that occurred before February 24, 2021. Likewise, Plaintiff is time-barred from asserting any § 1981 contract-formation claim arising before June 13, 2021 and any § 1981 post-formation claim arising before June 13, 2018. Plaintiff's claim for discriminatory denial of a severance package on June 2, 2021 constitutes a post-formation claim, and thus, is not time-barred.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Partial Motion to Dismiss (ECF No. 5) is DENIED AS MOOT IN PART, GRANTED IN PART and DENIED IN PART as stated herein.

New Orleans, Louisiana, this 9th day of September, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[33] *See, e.g., Guzman v. El Paso Nat. Gas Co.*, No. SA-88-CA-533, 1990 WL 41429, at *4 (W.D. Tex. Jan. 8, 1990).